UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH NIGRO, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:23-680 |
| v. | : | (JUDGE MANNION) |
| QAZI FARHAN UDDIN, MD and WILKES-BARRE HOSPITAL COMPANY, LLC d/b/a WILKES-BARRE GENERAL HOSPITAL, | : | |
| Defendants | : | |
| v. | : | |
| RADIOLOGY ASSOCIATES OF WYOMING VALLEY, INC. and THE RADIOLOGY GROUP, LLC, | : | |
| Additional Defendants | : | |

### MEMORANDUM

Presently before the court is Additional Defendant Radiology Associates of Wyoming Valley, Inc. (hereinafter "RAWV") and Additional Defendant The Radiology Group, LLC's (hereinafter "TRG"), joint motion to bifurcate. (**Doc. 97**). The motion will be **DENIED** for the reasons stated herein.

### I. BACKGROUND

On April 25, 2023, plaintiff Joseph Nigro (hereinafter "Plaintiff") filed the above-captioned medical negligence action, pursuant to diversity jurisdiction

under 28 U.S.C. §1332(a). (Doc. 1). The action stems from a February 8, 2020, incident in which Plaintiff suffered a chest injury as a result of an elbow blow during a collegiate basketball game. *Id.* at ¶¶ 12-17. Plaintiff was then taken to defendant Wilkes-Barre Hospital Company, LLC d/b/a Wilkes-Barre General Hospital (hereinafter "WBGH") where x-ray images were taken by defendant Dr. Qazi Farhan Uddin (hereinafter "Dr. Uddin"). Dr. Uddin determined that "soft tissues and bony structures demonstrated no acute pathology," and that his chest injury was entirely from the elbowing. *Id.* at ¶ 22. Over a year later, on May 1, 2021, Plaintiff woke up with shooting pain in his arms, chest pain, shortness of breath, and a previously unnoticed bump under his chest. *Id.* at ¶ 27. Ultimately, doctors determined that he had a cancerous mass in his chest due to Hodgkin's lymphoma. *Id.* at ¶¶ 28-32. The basis of Plaintiff's claim is that the mass allegedly should have been detected in the x-ray images taken during his February 8, 2020, visit to WBGH.

On October 18, 2023, WBGH filed a Joinder Complaint against RAWV, (Doc. 19), and on November 9, 2023, filed the same against TRG, (Doc. 27).

On August 20, 2025, RAWV and TRG filed the present motion to bifurcate, seeking the court to determine whether it "should grant the Motion for bifurcation of Additional Defendants pursuant to Fed. R. Civ. P. 42(b) and

order that the liability issues in this matter be tried first, followed by a trial on damages, which will include the contribution and indemnity issues, if necessary[.]" (Doc. 99 at 4).

On September 2, 2025, Plaintiff filed his brief in opposition. (Doc. 98). On September 3, 2025, RAWV and TRG filed their brief in support of their motion. (Doc. 99). Finally, on September 17, 2025, WBGH and Dr. Uddin filed a joint response[1] to the motion, (Doc. 101), as well as a joint brief in opposition to the motion, (Doc. 102). The matter is now fully briefed and ripe for review.

## II.   LEGAL STANDARD

Rule 42(b) of the Federal Rules of Civil Procedure allows a court to order a separate trial of one or more separate issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "The court has wide latitude in deciding whether to sever and stay proceedings by weighing the competing interests of the parties and attempting to maintain a fair balance." *Griffith v. Allstate Ins. Co.*, 90 F.Supp.3d 344, 346 (M.D.Pa. 2014). While bifurcation is "encouraged where experience has demonstrated its worth . . . separation of issues for trial is not to be routinely ordered." *Lis*

---

[1] A "response" (or "answer") to a motion is an unnecessary filing in federal court. The proper filings are simply a motion, brief in support, brief in opposition, and reply brief.

*v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978) (quoting Fed. R. Civ. P. 42(b) advisory committee note (1966)). The Third Circuit has also noted that "bifurcation is *appropriate* where litigation of one issue . . . may eliminate the need to litigate a second issue." *In re Bayside Prison Litig.*, 157 F.App'x 545, 547-48 (3d Cir. 2005) (emphasis in original). However, bifurcation is not required where the "issues are so closely interwoven that the plaintiff would have to present the same evidence twice in separate trials." *Id.* at 548.

In determining whether bifurcation is appropriate, the court considers four factors: "(1) whether the issues are significantly different from each other; (2) whether they require separate witnesses and documents; (3) whether the nonmoving party would be prejudiced by bifurcation; and (4) whether the moving party would be prejudiced if bifurcation is not granted." *Griffith*, 90 F.Supp.3d at 346 (citing *Cooper v. Metlife Auto & Home*, 2013 WL 4010998, *2 (W.D.Pa. 2013) (citing *Reading Tube Corp. v. Emps. Ins. of Wausau*, 944 F.Supp. 398, 404 (E.D.Pa. 1996))). Ultimately, the moving party bears the burden of demonstrating that bifurcation is appropriate. *See id.*; *see also Reading Tube Corp.* at 404.

## III. DISCUSSION

RAWV and TRG ask this court to determine whether it "should grant the Motion for bifurcation of Additional Defendants pursuant to Fed. R. Civ. P. 42(b) and order that the liability issues in this matter be tried first, followed by a trial on damages, which will include the contribution and indemnity issues, if necessary[.]" (Doc. 99 at 4). The court finds, based on the following analysis of the aforementioned factors addressed in *Griffith*, that bifurcation is not warranted.

With respect to the first factor—whether the issues are significantly different from each other—the court finds that they are not. A determination of liability here requires an assessment of the nature of the relationships between the parties. A determination of who is responsible for damages, i.e., an assessment of contribution and indemnification claims, will necessarily also require an assessment of the nature of the relationships between the parties. Logically, such an assessment will be made using the same evidence. Such evidence may include contracts, insurance coverage, and testimony of certain individuals. Requiring two separate juries to hear the same evidence and make the same determination would be senseless. The issues are interwoven.

As for why a determination of liability requires an assessment of the nature of the relationships between the parties, according to Dr. Uddin and WBGH:

> the case should be scrutinized as possessing a circular chain linking each Defendant to the next. Basically, Plaintiff sought medical treatment at WBGH on February 8, 2020. Previously, WBGH had contracted with RAWV for the latter to be the exclusive provider of radiology services inside the hospital's walls. However, the PSA [Professional Services Agreement] also permitted RAWV to subcontract, provided it maintain full responsibility and oversight of the selected entity, which is all confirmed by Corporate Designee Dr. Sarada. Indeed, RAWV and TRG reached such an agreement. Consequently, TRG positioned Dr. Uddin in WBGH per the RSA [Radiology Services Agreement] and ICA[ ] [Independent Contract Agreement]. Dr. Uddin ended up being the radiologist administering the services to Plaintiff, but both RAWV and TRG were very much involved based on the unrebutted evidence.

(Doc. 102 at 16-17). Furthermore, where the nature of a relationship is contested (i.e., where there is a disagreement as to whether the relationship in question is properly classified as an employer-employee relationship or an independent contractor-contractor relationship), it is the "exclusive function of the jury to determine, under the evidence, the precise nature of the

relationship." *Feller v. New Amsterdam Cas. Co.*, 70 A.2d 299, 300-301 (Pa. 1950). Here, this is exactly the case. As Dr. Uddin and WBGH put it:

> Although Additional Defendants have thrown around the phrase "independent contractor" a fair amount throughout the course of litigation, agency is defined by the facts and circumstances of a case and not mere terminology . . . Drs. Sarada's and Uddin's sworn testimony is certainly evidence that must be evaluated to weigh upon the divisive conceptualization of an employee versus independent contractor[.]

(Doc. 102 at 17). Finally, a determination on the nature of the relationships between the parties is critical because "[i]n order to establish an *actual* agency relationship, it must be shown that the employer-hospital controlled or had the right to control the physical conduct of the servant-physician in the performance of his work." *Simmons v. St. Clair Memorial Hospital*, 481 A.2d 870, 873-874 (Pa. Super. 1984). "Where the evidence is conflicting, the jury must decide whether the requisite right of control exists to impose vicarious liability on the employer." *Id.* Thus, considering that the nature of the professional relationships between the parties is contested, and that an understanding of those relationships likely requires evidence of contracts, insurance coverage, and testimony to be presented, the issues are interwoven such that evidence pertaining to indemnification and contribution

will necessarily be presented during the liability phase of trial. Thus, this factor weighs against bifurcation.

Before turning to the second factor, the court notes Plaintiff's argument that employment contracts and insurance coverage documents are also necessary for his ability to present his claim of punitive damages. Plaintiff contests that the "MCARE Act requires health care providers to carry private professional liability insurance and contribute to the MCARE fund." (Doc. 98 at 5) (citations omitted). If RAWV, TRG, and/or Dr. Uddin did not maintain such coverage, punitive damages may be warranted according to Plaintiff, as "Having no safeguards in place to ensure compliance with the insurance requirements mandated by state law arguably reaches the 'subjective appreciation of the risk of harm and conscious disregard of that risk.'" *Id.* (citing *Feld v. Merriam*, 485 A.2d 742 (1984)). Thus, again, the issues of liability and damages are interwoven.

Turning to the second factor—whether [the issues] require separate witnesses and documents—relevant contracts, insurance coverage policies, and deposition testimony of key individuals are likely necessary for the jury to determine the nature of the professional relationships between the parties, which is likely necessary to determine liability. Such evidence is also clearly

needed to determine indemnity and contribution. Thus, the second factor weighs against bifurcation.

As to the third factor—whether the nonmoving party would be prejudiced by bifurcation—it is clear the nonmoving parties here would be. As stated in WBGH and Dr. Uddin's joint brief, "If a jury finds there was no negligence, the case will conclude. Otherwise, the Defendants' respective liabilities must be decided. Convenience and expeditiousness dictate that such a decision is better made at that time, rather than by the prolonged time and expense to supply a different jury virtually identical information so it may allocate fault among the defendants." (Doc. 102 at 19). The court agrees.

Finally, regarding the fourth factor, RAWV and TRG argue that they will be prejudiced if bifurcation is not granted:

> [Because of] the issue of insurance coverage that the jury should not be permitted to hear under Rule 411 [of the Federal Rules of Evidence]. Once the jury hears about insurance coverage, they may be more likely or inclined to reach a verdict against Dr. Uddin or WBGH . . . Moreover, [TRG and RAWV would be] prejudiced in that they would be required to participate in a trial within a trial, which would be unnecessary if a jury does not find liability against either Dr. Uddin or WBGH.

(Doc. 99 at 13-14). The court disagrees.

These fears are misguided. There will be no "trial within a trial." Rather, certain evidence may simply be multipurposed. Furthermore, Rule 411 does not preclude the introduction of insurance coverage evidence. The rule itself states:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But **the court may admit this evidence for another purpose, such as** proving a witness's bias or prejudice or **proving agency, ownership or control**.

(emphasis added). Therefore, evidence of insurance coverage may be admissible. Thus, the court finds that an un-bifurcated trial would not prejudice RAWV and TRG.

Finally, the court notes that at this point it is premature to determine whether specific pieces of evidence would be admissible wholly or on a limited basis. The best way to make that determination is to keep the issues joined, allow discovery to proceed, and bring both issues to trial as quickly as possible. Any discovery disputes or questions of privilege can be handled through the discovery dispute procedures employed by the court.

### IV.　CONCLUSION

For the foregoing reasons, RAWV and TRG's joint motion to bifurcate, (Doc. 97), will be **DENIED**. An appropriate order will follow.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 23, 2025**
23-680-02