## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH NIGRO,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:23-680** |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **QAZI FARHAN UDDIN, MD and** | | |
| **WILKES-BARRE HOSPITAL** | : | |
| **COMPANY, LLC d/b/a WILKES-** | | |
| **BARRE GENERAL HOSPITAL,** | : | |
| | | |
| **Defendants,** | : | |
| **v.** | | |
| | : | |
| **RADIOLOGY ASSOCIATES OF** | | |
| **WYOMING VALLEY, INC. and** | : | |
| **THE RADIOLOGY GROUP, LLC,** | | |
| | : | |
| **Additional** | | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

Pending before the Court is defendant Wilkes-Barre Hospital Company, LLC's d/b/a Wilkes-Barre General Hospital ("WBGH") motion for partial summary judgment as to all claims against it sounding in corporate negligence. (**Doc. 113**). For the reasons set forth herein, the motion will be **GRANTED**.

## I.    Background[1]

On April 25, 2023, Plaintiff filed the above-captioned medical negligence action, pursuant to diversity jurisdiction under 28 U.S.C. §1332(a). (Doc. 1). The action stems from a February 8, 2020, incident in which Plaintiff suffered a chest injury resulting from an elbow blow during a collegiate basketball game. *Id.*, ¶¶12-17. Plaintiff was then taken to WBGH where x-ray images were taken by defendant Dr. Qazi Farhan Uddin ("Dr. Uddin"). Dr. Uddin determined that "soft tissues and bony structures demonstrated no acute pathology," and that his chest injury was entirely from the elbowing. *Id.*, ¶22. Over a year later, on May 1, 2021, Plaintiff woke up with shooting pain in his arms, chest pain, shortness of breath, and a previously unnoticed bump under his chest. *Id.*, ¶27. Ultimately, doctors determined that he had a cancerous mass in his chest due to Hodgkin's lymphoma. *Id.*, ¶¶28-32. The basis of Plaintiff's claim is that the mass

---

[1] As required by Local Rule 56.1, WBGH has filed a statement of material facts, and Plaintiff has filed a statement responding to the numbered paragraphs in WBGH's statement of material facts. Although the rule provides that the statement of material facts and response shall be submitted separately, the parties included them in the motion and response. (Docs. 113 at 2-5, 116 at 2-3). Nonetheless, for purposes of this motion only, the Court periodically refers to these averments.

- 2 -

allegedly should have been detected in the x-ray images taken during his February 8, 2020, visit to WBGH.

On April 25, 2023, Plaintiff filed a Complaint against, *inter alia*, Dr. Uddin and WBGH. (Doc. 1). On October 18, 2023, WBGH filed a Joinder Complaint against Radiology Associates of Wyoming Valley, Inc. ("RAWV"), (Doc. 19), and on November 9, 2023, filed the same against The Radiology Group, LLC ("TRG"), (Doc. 27).

Plaintiff alleges claims of vicarious liability and corporate negligence against WBGH. (Doc. 1, ¶¶37-49). With respect to Plaintiff's corporate negligence claim, Count Three of the Complaint alleges that WBGH was:

> [D]irectly negligent and breached its duties to Plaintiff through actions or omissions including, but not limited to, the following:
>     a) Failure to use reasonable care in the maintenance of safe and adequate facilities and equipment;
>     b) Failure to select and retain competent, careful, and prudent licensed medical professionals and other staff, including but not limited to Dr. Uddin;
>     c) Failure to oversee and supervise all persons practicing as licensed medical professionals, including but not limited to Dr. Uddin; [and]
>     d) Failure to formulate, adopt, and/or enforce adequate rules, procedures and policies to ensure care and treatment that did not deviate from good and acceptable

- 3 -

medical standards in connection with the services provided to Plaintiff.

*Id.*, ¶48.

Fact discovery closed on August 29, 2025. (Doc. 80). Expert discovery closed on December 18, 2025. *Id.* At the close of all discovery, WBGH filed the instant motion for partial summary judgment as to all claims against it sounding in corporate negligence and accompanying brief. (Docs. 113, 115). Plaintiff filed his brief in opposition on January 20, 2026. (Doc. 116). WBGH filed its reply to Plaintiff's brief in opposition on February 3, 2026. (Doc. 121). This matter is now ripe for disposition.

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is [(1)] no genuine issue as to any material fact and [(2)] that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). Material facts are those that "might affect the outcome of the suit under the governing law," and a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (holding that a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on a motion for summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. The moving party's burden has recently been explained this way:

> In interpreting Rule 56, the Supreme Court has outlined two closely related methods for a movant to succeed at summary judgment. First, under the standard approach, the moving

- 5 -

party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986) (explaining the meaning of the terms 'material' and 'genuine'). Second, under the *Celotex* approach, a moving party may instead demonstrate that the nonmoving party has not made "a showing sufficient to establish the existence of an element essential to that party's case … *on which that party will bear the burden of proof at trial.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).

*Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622 (3d Cir. 2024).

If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof

- 6 -

at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.    Discussion

Corporate negligence is "a theory of hospital liability . . . under which the hospital is liable if it fails to uphold the proper standard of care owed its patient." *Thompson v. Nason Hospital*, 591 A.2d 703, 707-08 (Pa. 1991). The doctrine is based on the systematic or institutional negligence of the hospital itself, rather than vicarious liability for the conduct of its employees or physicians. *Id.* The hospital's duties have been classified into four general areas:

> (1) [A] duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure care for the patients.

*Id.* (internal citations omitted). To establish a *prima facie* case of corporate negligence, Plaintiff must demonstrate:

> 1) the hospital acted in deviation from the standard of care;

2) the hospital had actual or constructive notice of the defects or procedures which created the harm; and

3) that the conduct was a substantial factor in bringing about the harm.

*Seels v. Tenet Health System Hahnemann, LLC*, 167 A.3d 190, 205 (Pa.Super. 2017) (internal citations omitted).

Here, WBGH argues that "because medical negligence cases involve matters not within the ordinary knowledge and experience of laypersons," expert testimony was required to substantiate Plaintiff's claim of corporate negligence against WBGH. (Doc. 113 at 7-8). WBGH notes that the expert reports and rebuttals offered by Plaintiff, which were authored by Dr. Peter Wiernik, Dr. Anthony Gilet, and Nurse Kimberly Kushner, fail to identify any systematic or institutional failures that caused Plaintiff to suffer the alleged harm. (Doc. 113, ¶¶10-19); *see also* (Docs. 113-1, 113-2, 113-3, 113-4, 113-5).

In response, Plaintiff argues that the "issues related to corporate negligence are obvious and within the layperson's understanding" such that no expert testimony is necessary. (Doc. 116 at 4). Plaintiff explains that "the most likely finding of corporate negligence against WBGH arises in the context of failing to select competent physicians, failure to oversee all persons who practice medicine within its walls, and failing to formulate, adopt

- 8 -

and enforce adequate rules and policies to ensure quality care for patients."
*Id.* at 5. However, although WBGH's motion relates to *all claims of corporate negligence*, Plaintiff's response is limited to his claim that WBGH failed to adopt policies with respect to physicians' malpractice insurance, arguing that liability can be found without an expert. *See id.*

In response to WBGH's motion, Plaintiff refers to deposition testimony from Dr. Kamal Sarada, who stated that she was unaware of any policies ensuring that all radiologists carry malpractice insurance, despite 49 Pa. Code §16.32's requirement that physicians maintain professional liability insurance. *Id.* The testimony revealed that the credentialing committee hired Dr. Uddin without adhering to any policy requiring it to confirm whether he complied with the insurance requirements. *Id.* at 6. Plaintiff argues that he was injured by this act because a proper policy would have either prevented Dr. Uddin from practicing in Pennsylvania for failing to comply with the state law, or he would have obtained proper insurance coverage. *Id.*

In other words, Plaintiff states that:

> Because the facts show that . . . WBGH credentialed doctors
> to practice medicine without adequate checkpoints to confirm
> state mandated insurance, Plaintiff submits that any rational
> juror would easily understand and appreciate the risk and/or
> possible negative consequence of placing patients under the

- 9 -

care of uninsured practitioners of medicine. Because the issue is squarely with the common knowledge of most persons, [P]laintiff submits that no expert testimony is necessary[.]

*Id.* at 7. Plaintiff elaborates:

[A] reasonable juror could find the act of credentialing a doctor without malpractice insurance by itself, enough to find liability. No expert is required to inform a jury that, when an uninsured doctor is practicing medicine in your hospital, there is no insurance coverage available if a patient is injured by that person. If no insurance policy existed or exists, no insurance coverage is available. Every potential juror additionally understands that if you fail to have any safeguards to confirm insurance coverage, there is a possibility that some [doctor] will be placed into treating patients without malpractice insurance. And Pennsylvania law is clear in that, if a [doctor] does not have insurance, they are practicing in violation of the state's law.

*Id.* at 6.

Thus, the issue before the Court is whether expert testimony is required to substantiate Plaintiff's corporate negligence claim based on the theory that WBGH allegedly lacked a policy to confirm that Dr. Uddin complied with Pennsylvania state insurance requirements. If answered in the

affirmative, the Court must find that there is no genuine issue of material fact, and grant summary judgment in favor of WBGH.

> [A] claim of corporate negligence, like a claim of medical malpractice, **requires that in cases where a hospital's negligence is not obvious, a plaintiff must establish through expert testimony that a hospital's acts deviated from an accepted standard of care and that the deviation was a substantial factor in causing plaintiff's harm** . . . Expert testimony is not, however, required to establish a breach of duty **"where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even nonprofessional persons."** . . . Nor is expert testimony as to causation required "where there is an obvious causal relationship" between the injury complained of and the alleged negligent act . . . "An obvious causal relationship exists where the injuries are either an 'immediate and direct' or the 'natural and probable' result of the alleged negligent act."

*Matthews v. Clarion Hosp.*, 742 A.2d 1111, 1112 (Pa.Super. 1999) (internal citations omitted) (emphasis added). Because the law is clear on the extent to which an expert is required to establish corporate negligence, the Court holds that WBGH met its initial burden of establishing that Plaintiff has not made "a showing sufficient to establish the existence of an element essential

- 11 -

to that party's case … *on which that party will bear the burden of proof at trial." Mall Chevrolet*, 99 F.4th at 622. Therefore, the burden shifts to Plaintiff to establish that his corporate negligence claims are within the realm of ordinary understanding such that an expert is not required. However, Plaintiff fails to do so.

The Court is not compelled by Plaintiff's blanket assertion that "every potential juror" understands the implications of a non-existent policy to confirm physicians' malpractice insurance status. (Doc. 116 at 6). Plaintiff asserts that WBGH's failure to maintain such a policy is a deviation from the standard of care, and "by itself, enough to find liability." (Doc. 116 at 6-7). This is not so. As Pennsylvania law clearly requires, the deviation from the standard of care is only one requirement to establish a corporate negligence claim. *See Seels*, 167 A.3d 190, *supra*. Even if, *arguendo*, WBGH's failure to maintain a policy regarding malpractice insurance was a *per se* deviation of the standard of care, Plaintiff also needs to establish the remaining elements: (2) WBGH's knowledge that the non-existent policy would create the harm that Plaintiff purportedly suffered, and (3) that the non-existent policy did cause Plaintiff's injury. *See id.*

Regarding the second element, Plaintiff does not address whether "the hospital had actual or constructive notice of the defects or procedures which

- 12 -

created the harm[.]" *Id.* While Plaintiff refers to deposition testimony admitting WBGH's unawareness of any policy ensuring that physicians maintain malpractice insurance, he fails to identify whether WBGH was aware that not having such a policy would result in the harm Plaintiff alleges he suffered. (Doc. 116 at 5). Therefore, Plaintiff's *prima facie* showing of corporate negligence is deficient.

Finally, Plaintiff fails to establish causation between the non-existent policy and his purported injury. Plaintiff states:

> Here WBGH credentialed doctors without confirming whether they were in compliance with state minimum requirements. The hospital developed these policies and procedures, retained control of these policies, and the failures of these policies created the circumstance where a doctor practiced medicine without malpractice insurance as required by state law. Plaintiff was injured by this act as an investigation of insurance coverage for doctors would have either; prevented Defendant Dr. Uddin from practicing in the state for failure to comply with the state law or he would have obtained the proper insurance coverage and Plaintiff would have an avenue to pursue compensation for the doctor.

(Doc. 116 at 6-7). Plaintiff loosely argues that but-for the hospital's failure to maintain a policy to confirm whether Dr. Uddin maintained malpractice insurance, Plaintiff suffered. However, Plaintiff provides no support, outside

- 13 -

of mere speculation, that Dr. Uddin would not be permitted to practice in Pennsylvania if the hospital maintained such a policy. Curiously, 49 Pa. Code §16.32 states that:

> [A] physician . . . shall maintain the required amount of professional liability insurance, or have an approved self-insurance plan, and pay the required Medical Care Availability and Reduction of Error (MCARE) Fund assessment as a condition of practice . . . **Failure to comply with this section subjects the physician . . . to disciplinary action by the Board.**

49 Pa. Code §16.32 (emphasis added). Contrary to Plaintiff's assertions, at no point does the MCARE Act state that a physician's failure to comply with state insurance requirements results in a prevention "from practicing in the state." (Doc. 116). The only listed repercussion is that the physician may be subjected to disciplinary action.

Additionally, Plaintiff alleges that he was injured by being unable to pursue compensation from Dr. Uddin. Even if Dr. Uddin was uninsured, there was nothing preventing Plaintiff from suing Dr. Uddin, especially given that he remains a listed defendant in the underlying cause of action. Also, this is not the injury upon which the underlying cause of action rests—it is "great pain and suffering of the mind and body . . . permanent bodily injuries . . . medical expenses in order to correct the conditions caused by Defendants .

- 14 -

. . . medical treatment that he otherwise would not have needed . . . and [changes] to his ordinary routine, employment and affairs[.]" (Doc. 1, ¶49). The Court does not find that there is an obvious causal relationship between WBGH's corporate acts/omissions and Plaintiff's injuries, given that the purported injuries are not "immediate and direct" nor "natural and probable." *Matthews,* 742 A.2d at 1112.

Considering the above, the Court agrees with WBGH's position. Plaintiff's allegation that WBGH's failure to maintain a policy on physicians' malpractice insurance coverage resulted in Plaintiff's injuries is beyond the knowledge of the average juror. The average juror would have no conception of what the standard of care is with respect to such hospital policies, or whether a hospital not having such a policy could result in a physician's inability to remain employed at said hospital. Plaintiff cannot survive summary judgment because he failed to establish that the issues related to corporate negligence are obvious. The one claim Plaintiff argues in his opposition—the effects of a non-existent policy—is based on nothing more than a "metaphysical doubt as to material facts." *Boyle*, 139 F.3d at 393, *supra*. Plaintiff should have obtained expert testimony to establish his claim of corporate negligence. Because the discovery deadline has since passed, and there is no such expert testimony, the Court holds that Plaintiff has failed

- 15 -

to establish a *prima facie* case showing that WBGH (1) acted in deviation from the standard of care; (2) had actual or constructive notice of the defects or procedures which created the harm; and (3) that the conduct was a substantial factor in bringing about the harm. *See Seels*, 167 A.3d at 205, *supra*.

## IV.    Conclusion

For the reasons set forth above, viewed in the light most favorable to Plaintiff, the Court holds that no genuine issue of material fact exists as to whether WBGH engaged in corporate negligence. The issue of corporate negligence cannot be resolved by a jury because Plaintiff has failed to make a *prima facie* showing that WBGH's alleged corporate negligence was obvious such that calling an expert witness is unnecessary. Therefore, **IT IS HEREBY ORDERED THAT** WBGH's motion for partial summary judgment, (Doc. 113), is **GRANTED**. An appropriate order will follow.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 6/3/26
23-680-03

- 16 -