UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH NIGRO, :

  Plaintiff, : CIVIL ACTION NO. 3:23-680

 v.

  : (JUDGE MANNION)

QAZI FARHAN UDDIN, MD and
WILKES-BARRE HOSPITAL :
COMPANY, LLC d/b/a WILKES-
BARRE GENERAL HOSPITAL, :

  Defendants, :

 v.

  :

RADIOLOGY ASSOCIATES OF
WYOMING VALLEY, INC. and :
THE RADIOLOGY GROUP, LLC,

  :

  Additional
  Defendants. :

FILED
SCRANTON

JUL 06 2026

PER ___ⅅⅉ___
 DEPUTY CLERK

## MEMORANDUM

Pending before the Court is plaintiff Joseph Nigro's ("Plaintiff") motion for partial summary judgment against defendant Wilkes-Barre Hospital Company d/b/a Wilkes-Barre General Hospital ("WBGH") on the issue of apparent agency. (**Doc. 109**). For the reasons set forth herein, the motion will be **DENIED**.

## I.    Background[1]

On April 25, 2023, Plaintiff filed the above-captioned medical negligence action, pursuant to diversity jurisdiction under 28 U.S.C. §1332(a). (Doc. 1). The action stems from a February 8, 2020, incident in which Plaintiff suffered a chest injury resulting from an elbow blow during a collegiate basketball game. *Id.*, ¶¶12-17. Plaintiff was then taken to WBGH where x-ray images were captured. *Id.*, ¶19. Dr. Qazi Farhan Uddin ("Dr. Uddin") had been employed by "The Radiology Group" as a teleradiologist, interpreting x-rays and films from his home in Virginia. (Doc. 110-1 at 3, 5). While working remotely, Dr. Uddin reviewed Plaintiff's x-rays and determined that "soft tissues and bony structures demonstrated no acute pathology," and that his chest injury was entirely from the elbowing. (Docs. 110-1 at 4; 1, ¶22). Over a year later, on May 1, 2021, Plaintiff woke up with shooting pain in his arms, chest pain, shortness of breath, and a previously unnoticed bump under his chest. *Id.*, ¶27. Ultimately, doctors determined that he had a

---

[1] As required by Local Rule 56.1, Plaintiff has filed a statement of material facts, and WBGH has filed a statement responding to the numbered paragraphs in Plaintiff's statement of material facts. Although the rule provides that the statement of material facts and response shall be submitted separately, the parties included them in the motion and response. (Docs. 109 at 1-6, 110 at 2-12). Nonetheless, for purposes of this motion only, the Court periodically refers to these averments.

cancerous mass in his chest due to Hodgkin's lymphoma. *Id.*, ¶¶28-32. The basis of Plaintiff's claim is that the mass allegedly should have been detected in the x-ray images taken during his February 8, 2020, visit to WBGH.

On April 25, 2023, Plaintiff filed a Complaint against, *inter alia*, Dr. Uddin and WBGH. (Doc. 1). On October 18, 2023, WBGH filed a Joinder Complaint against Radiology Associates of Wyoming Valley, Inc. ("RAWV"), (Doc. 19), and on November 9, 2023, filed the same against The Radiology Group, LLC ("TRG"), (Doc. 27).

Plaintiff alleges claims of vicarious liability and corporate negligence against WBGH. (Doc. 1, ¶¶37-49). With respect to Plaintiff's vicarious liability claim, Count Two of the Complaint alleges that WBGH was:

> 38. . . . [A] for-profit business engaged in the business of owning and/or operating [WBGH] located in the Commonwealth of Pennsylvania, providing healthcare, emergency medical care, medical services, nursing care and all services commonly provided by hospitals within the Commonwealth of Pennsylvania.
>
> 39. At all times relevant hereto, defendant [WBGH] was duly licensed to operate said hospital in the Commonwealth of Pennsylvania.
>
> 40. Defendant, [WBGH] was the employer, supervisor, partner, or otherwise employed defendant [Dr. Uddin] when the act(s) of negligence alleged herein occurred.

**41**. At all times relevant to the within causes of action, [Dr. Uddin] was being monetarily compensated by defendant, [WBGH], for the care and treatment rendered to Plaintiff . . .

**42**. Defendant, [WBGH] is vicariously liable for the acts and omissions of its agents, employees, servants and/or partners, including but not limited to [Dr. Uddin], under the doctrine of *respondeat superior* or otherwise.

*Id.*, ¶¶38-42.

On October 28, 2025, Plaintiff filed the instant motion for partial summary judgment as to the issue of apparent agency against WBGH. (Doc. 109). WBGH filed its brief in opposition on November 18, 2025. (Doc. 110). Plaintiff filed his reply to WBGH's brief in opposition on December 2, 2025. (Doc. 111). This matter is now ripe for disposition.

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is [(1)] no genuine issue as to any material fact and [(2)] that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). Material facts are those that "might affect the outcome of the suit under the governing law," and a dispute is

"genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (holding that a court may not weigh the evidence or make credibility determinations). Rather, the Court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on a motion for summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. The moving party's burden has recently been explained this way:

- 5 -

In interpreting Rule 56, the Supreme Court has outlined two closely related methods for a movant to succeed at summary judgment. First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986) (explaining the meaning of the terms 'material' and 'genuine'). Second, under the *Celotex* approach, a moving party may instead demonstrate that the nonmoving party has not made "a showing sufficient to establish the existence of an element essential to that party's case … *on which that party will bear the burden of proof at trial.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).

*Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622 (3d Cir. 2024).

If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing

- 6 -

sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.    Discussion

Vicarious liability, as alleged in Plaintiff's Complaint:

> [M]eans in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it.

*Green v. Pennsylvania Hosp.*, 123 A.3d 310, 316 (Pa. 2015) (quoting *Crowell v. Cty. of Philadelphia*, A.2d 1178, 1181 (Pa. 1992)). "Once the requisite relationship . . . is demonstrated, 'the innocent victim has recourse against the principal,' even if 'the ultimately responsible agent is unavailable or lacks the ability to pay.'" *Green*, 123 A.2d at 316 (quoting *Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1383 (Pa. 1989). Employer liability is "simply one form of agency liability." *Forrer-Frye v. Sabatini*, No. 4:20-CV-593, 2023 WL 373236 at *3 (M.D.Pa. Jan 24, 2023).

- 7 -

The Medical Care Availability and Reduction of Error Act ("MCARE Act") provides that:

> (a) Vicarious liability.--A hospital may be held vicariously liable for the acts of another health care provider through principles of ostensible agency only if the evidence shows that:
>> (1) a reasonably prudent person in the patient's position would be justified in the belief that the care in question was being rendered by the hospital or its agents; or
>> (2) the care in question was advertised or otherwise represented to the patient as care being rendered by the hospital or its agents.
>
> (b) Staff privileges.--Evidence that a physician holds staff privileges at a hospital shall be insufficient to establish vicarious liability through principles of ostensible agency unless the claimant meets the requirements of subsection (a)(1) or (2).

40 P.S. §1303.516. "Ordinarily, the question of the existence of a principal-agent or master-servant relationship is one of fact for the jury to determine." *Breslin by Breslin v. Risarelli*, 308 Pa.Super. 179, 184 (1982). "However, where the facts giving rise to the relationship are not in dispute, 'the question of the relationship between the parties is one which is properly determined by the court.'" *Id.* (quoting *Juarbe v. Cty. of Philadelphia*, 431 A.2d 1073, 1076 (Pa.Super. 1981)). Thus, the question before the Court is if a genuine

- 8 -

issue of material fact exists as to whether a reasonably prudent person in Plaintiff's position would believe that Dr. Uddin was an ostensible agent of WBGH.

To determine if a doctor is an ostensible agent of a hospital, the Court must decide whether WBGH "'[held] out' [Dr. Uddin] as its employee." *Walls v. Hazleton State General Hosp.*, 629 A.2d 232, 237 (Pa.Commw. 1993) (quoting *Capan v. Devine Providence Hosp.*, 430 A.2d 647, 649 (Pa.Super. 1980). "'Holding out' has been defined as 'the hospital act[ing] or omit[ing] to act in some way which leads the patient to a reasonable belief he is being treated by the hospital or one of its employees.'" *Id.*

Here, Plaintiff argues that he is entitled to summary judgment because he believes that the facts satisfy both prongs of 40 P.S. §1303.516(a). (Doc. 109 at 8). Plaintiff first argues that he satisfied the higher burden of §1303.516(a)(2), as "the hospital advertised and represented themselves to be the provider of [his] care and/or treatment on several occasions." *Id.*

Specifically, Plaintiff argues:

> The Diagnostic Radiology report provided to Plaintiff lists [WBGH] as the medical entity which rendered Plaintiff's diagnosis and treatment and the medical bills solely list [WBGH]. The X-rays were administered inside the [WBGH] radiology department, and a physician employed by the

- 9 -

> [WBGH] communicated the diagnosis to [Plaintiff] and his family. Further, the badges worn by the medical staff involved in Plaintiff's care and treatment listed their name, employment position, and the name of WBGH[.]

*Id.*

Second, with respect to §1303.516(a)(1), Plaintiff argues that a reasonably prudent person would be justified in believing that the care provided on the date of the injury was on behalf of WBGH. (Doc. 109 at 9). To support his claim, Plaintiff included affidavits from his mother and himself. (Docs. 109-1, 109-2). Plaintiff's mother stated, in relevant part:

> We were both under the impression that every physician who attended to [Plaintiff], every nurse who attended to him, as well as the physicians and medical providers working "behind the scenes" were employees or in some way agents or servants of [WBGH] . . . No one ever stated to us or suggested to us that a physician interpreting [Plaintiff's] chest x-ray was an independent contractor or was not even on site at the hospital the day [Plaintiff] was in the emergency department . . . [Plaintiff] and I were looking to the hospital as an institution, as opposed to a specific radiologist, for care . . . We were told that [Plaintiff] would need an x-ray, and prior to his discharge we were told that the x-ray was interpreted as showing no fractures. [Plaintiff was wheeled into the radiology room at [WBGH] for his x-ray, and he and I were both told by a Wilkes-Barre physician that the x-ray showed no fractures. We never

- 10 -

met Dr. Uddin, nobody mentioned Dr. Uddin's name, and we never sought to retain the services of any specific radiologist.

(Doc. 109-1). In Plaintiff's affidavit, he states:

It was my belief on the day of the treatment at the hospital, and it remained my belief until the time I reviewed the deposition of [Dr. Uddin] that the radiologist who would be interpreting my chest x-ray was an employee and/or an agent of [WBGH], and furthermore that he was on the premises of the hospital at the time of interpreting this x-ray. I was never informed that the interpreting radiologist was not an employee, agent or servant of [WBGH] . . . I do recall the emergency room physician advising me that I needed to have a chest x-ray, and then shortly after the x-ray had been completed advising me that the x-ray was interpreted as showing no fractures and that I was being discharged with the diagnosis of the chest wall contusion.

(Doc. 109-2). In addition to the above statements, Plaintiff cites additional testimony.[2] Margaret Lipperini testified that for as long as she has been in

---

[2] The Court notes that although Plaintiff attaches various exhibits of deposition testimony, it is unclear from whom the testimony was taken. He states in his motion that testimony from the corporate representative from defendant Radiology Associates of Wyoming Valley, Inc. ("RAWY"), Dr. Sarada, and WBGH's corporate designee, Ms. Lipperini, provide additional support for his motion. (Doc. 109 at 10-14). However, the exhibits themselves do not identify the requisite witnesses, and are not cited in the

*(footnote continued on next page)*

- 11 -

the hospital, she has not seen any written document, website or patient handout indicating the employment nature of the hospital physicians. (Doc. 109-3 at 2). However, she stated that WBGH placed two plaques in the emergency room indicating the employment status of physicians but could not recall whether doing so clarified any confusion regarding physicians' employment status. *Id.* at 4-5. Ms. Lipperini also conceded that "patients can be confused not only about the employment status of physicians, but also . . . about the employment status of staff[.]" *Id.* at 19.

Additionally, Dr. Kamal Sarada testified that he was unaware of any formal or informal policy where WBGH physicians notify patients what entity was providing the medical services. (Doc. 109-4 at 2). Moreover, Dr. Sarada agreed that a reasonably prudent person would read a physician's ID badge which has only the doctor's name and hospital and would therefore be justified in believing that the care was being rendered by an agent of the hospital. *Id.* at 8-9.

Finally, Plaintiff provided the Court with various WBGH records, which identify WBGH as the provider of care: the radiologist report (Doc. 109-5),

---

motion. (Docs. 109-3, 109-4). Based upon the context of the testimony, however, the Court supposes that Doc. 109-3 is the testimony of Ms. Lipperini and Doc. 109-4 is the testimony of Dr. Sarada.

the patient registration form (Doc. 109-6), and a summary of charges for Plaintiff's diagnosis and treatment (Doc. 109-2).

In response to Plaintiff's motion, WBGH argues that there is a genuine issue of material fact as to whether a reasonably prudent person in the Plaintiff's position would be justified in believing that Dr. Uddin was an ostensible agent of WBGH. (Doc. 110 at 16). WBGH notes that Plaintiff never interacted with Dr. Uddin, so it is unclear whether a reasonable person would believe that a physician reading x-ray films completely off site was acting as an agent of WBGH. *Id.* at 16-17. Additionally, WBGH argues that Plaintiff likens the subjective beliefs of his mother and himself to those of a reasonably prudent person. *Id.* at 17-18.

WBGH also points out potential inconsistencies between the sworn affidavits provided by Plaintiff and the deposition testimony taken on April 8, 2024. Specifically, both Plaintiff and his mother testified in their depositions that they do not remember the names of medical providers with whom they had contact. (Docs. 110-4 at 4, 110-6 at 3). However, in their sworn affidavits, both wrote that they believed the doctors providing care were employees of WBGH. (Docs. 110-3 at 2, 110-5 at 3). Curiously, Plaintiff wrote:

> It was my belief on the day of treatment at the hospital, and it remained my belief until the time I reviewed the deposition of radiologist [Dr. Uddin] that the radiologist who would be

- 13 -

interpreting my chest x-ray was an employee and/or an agent of Wilkes-Barre General Hospital, and furthermore that he was on the premises of the hospital at the time of interpreting this x-ray.

(Doc. 110-5 at 3). WBGH essentially argues that it cannot be true that Plaintiff was unable to remember the names of medical providers caring for him in his deposition, yet, a year later in a written affidavit, he was able to remember that he believed at the time of treatment Dr. Uddin was acting as an agent of WBGH. (Doc. 110 at 19). WBGH further points out that Plaintiff uses the subjective beliefs of Ms. Lipperini and Dr. Sarada to support his burden of showing that a reasonably prudent person would believe Dr. Uddin was an ostensible agent of WBGH, when subjectivity is not the standard. *Id.*

Secondly, WBGH notes that Plaintiff argued his billing statements showed only WBGH as the relevant care provider, however, he failed to identify an additional invoice sent from Radiology Associates of Wyoming Valley for Dr. Uddin's services. (Docs. 110 at 20, 11-9 at 2). Finally, WBGH argues that Plaintiff's claim regarding WBGH employees wearing WBGH badges is irrelevant given that Dr. Uddin has never been to WBGH, nor did he treat Plaintiff in person, so he was not observed wearing a badge. (Doc. 110 at 21).

- 14 -

Both parties cite *Green v. Pennsylvania Hospital. See* 123 A.3d at 310. In that case, the Supreme Court of Pennsylvania contemplated whether a sufficient question of fact existed as to whether a patient experiencing an acute medical emergency could reasonably believe that the medical staff responding were agents of the hospital. *Id.* The Court held that the requirement for establishing ostensible agency pursuant to the MCARE Act was indeed a question to be resolved by the jury. *Id.* at 323. In its reasoning, the Court quoted the *Capan* Court, which stated:

> [A] patient today frequently enters the hospital seeking a wide range of hospital services rather than personal treatment by a particular physician. It would be absurd to require such a patient to be familiar with the law of [*respondeat superior*] and so to inquire of each person who treated him whether he is an employee of the hospital or an independent contractor.

*Id.* at 319 (quoting *Capan*, 430 A.2d at 649, *supra*). In light of its holding, the *Green* Court found that the trial court erred by granting a nonsuit under §1303.516(a). *Id.* Although the matter at issue in *Green* was not a summary judgment motion, *Green* nonetheless stands for the proposition that a patient's perception of their physician's employment relationship to the hospital is an issue to be resolved by a jury.

- 15 -

Here, it is apparent that a genuine issue of material fact exists as to whether a reasonable person in Plaintiff's position would believe Dr. Uddin was an ostensible agent of WBGH. The subjective opinions offered by Plaintiff are insufficient to satisfy the objective standard required by the MCARE Act. While it may be true that Plaintiff interacted with medical professionals and subjectively believed they were agents of WBGH, Plaintiff had no interaction, whatsoever, with Dr. Uddin. Thus, this question must go to the jury.

## IV.    Conclusion

For the reasons set forth above, viewed in the light most favorable to WBGH, the Court holds that a genuine issue of material fact exists as to whether Dr. Uddin was an ostensible agent of WBGH, pursuant to 40 P.S. §1303.516. Therefore, **IT IS HEREBY ORDERED THAT** Plaintiff's motion for partial summary judgment, (Doc. 109), is **DENIED**. An appropriate order will follow. Additionally, by separate Order, the Court will set a date for the final pretrial conference and trial in this matter.

MALACHY E. MANNION
United States District Judge

DATE: 7/6/26
23-680-04

- 16 -