UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH NIGRO,                          :

          Plaintiff,        :      CIVIL ACTION NO. 3:23-680

   v.

                          :      (JUDGE MANNION)

QAZI FARHAN UDDIN, MD and
WILKES-BARRE HOSPITAL            :
COMPANY, LLC d/b/a WILKES-
BARRE GENERAL HOSPITAL,     :

         Defendants,     :

   v.                                  :

RADIOLOGY ASSOCIATES OF
WYOMING VALLEY, INC. and       :
THE RADIOLOGY GROUP, LLC,

               :

         Additional
         Defendants.     :

FILED
SCRANTON
PER_____
JUL 06 2026
DJ
DEPUTY CLERK

## <u>MEMORANDUM</u>

Pending before the Court is additional defendant Radiology Associates

of Wyoming Valley's ("RAWV") motion for summary judgment. (**Doc. 112**).

For the reasons set forth herein, the motion will be **DENIED**.

## I.    Background[1]

On April 25, 2023, Joseph Nigro ("Plaintiff") filed the above-captioned medical negligence action, pursuant to diversity jurisdiction under 28 U.S.C. §1332(a). (Doc. 1). The action stems from a February 8, 2020, incident in which Plaintiff suffered a chest injury resulting from an elbow blow during a collegiate basketball game. *Id.,* ¶¶12-17. Plaintiff was then admitted to Wilkes-Barre General Hospital ("WBGH") at 5:01 p.m., where x-ray images were captured. *Id.,* ¶¶ 16, 19. Dr. Qazi Farhan Uddin ("Dr. Uddin") had been employed by "The Radiology Group" ("TRG") as a teleradiologist, interpreting x-rays and films from his home in Virginia. (Doc. 110-1 at 3, 5). While working remotely, Dr. Uddin reviewed Plaintiff's x-rays and determined that "soft tissues and bony structures demonstrated no acute pathology," and that his chest injury was entirely from the elbowing. (Docs. 110-1 at 4; 1, ¶22). Plaintiff was discharged at 8:04 p.m. the same evening. (Doc. 1, ¶17).

---

[1] As required by Local Rule 56.1, RAWV filed a statement of material facts, and Joseph Nigro ("Plaintiff") and defendant Wilkes-Barre General Hospital ("WBGH") have filed statements responding to the numbered paragraphs in RAWV's statement of material facts. Although the rule provides that the statement of material facts and response shall be submitted separately, the parties included them in the motion and responses. (Docs. 112 at 1-12, 118 at 2-6, 120 at 1-9). Nonetheless, for purposes of this motion only, the Court periodically refers to these averments.

- 2 -

Over a year later, on May 1, 2021, Plaintiff woke up with shooting pain in his arms, chest pain, shortness of breath, and a previously unnoticed bump under his chest. *Id.*, ¶27. Ultimately, doctors determined that he had a cancerous mass in his chest due to Hodgkin's lymphoma. *Id.*, ¶¶28-32. The basis of Plaintiff's claim is that the mass allegedly should have been detected in the x-ray images taken during his February 8, 2020, visit to WBGH.

By way of background to explain the relationship between the parties, at the time of Plaintiff's injury, RAWV and WBGH were parties to a Professional Service Agreement ("PSA"), "whereby RAWV agreed to provide physicians to WBGH for the provision of radiology services." (Doc. 112, ¶17). The PSA states that "Provider shall provide the service of Radiology Department physician staffing . . . [and] Perform Interventional Radiology Services at Facility," listing WBGH as the "Facility" and RAWV as the "Provider." (Doc. 112-1 at 1). As part of the PSA, RAWV was responsible for ensuring "timely availability of the Service twenty four (24) hours a day, seven (7) days a week." *Id.* at 3. The PSA also states:

> As used in the Agreement, the terms "[RAWV]," "[RAWV]'s Representative," and/or "[RAWV]'s Representatives" shall all (i) **mean [RAWV] and all of [RAWV]'s employees, shareholders, partners, subcontractors, and agents of Provider providing Services under the Agreement and** (ii)

- 3 -

have the same meaning regardless of whether they are used individually or collectively in the Agreement.

(Doc. 112-1 at 3) (emphasis added). The PSA continues:

It is agreed that continuous Service by [RAWV] under this Agreement is a material obligation of [RAWV]. No substitutes for [RAWV] may provide services pursuant to the Agreement without [WBGH]'s prior written consent. Notwithstanding the foregoing, [RAWV] shall provide, at [RAWV]'s sole cost and expense, a substitute for any [RAWV]'s Representative who is unable to provide Services required under the Agreement so as to ensure the uninterrupted availability of the Service. As a condition of Providing Services under the Agreement, any such substitute shall first be accepted by [WBGH]'s Chief Executive Officer ("CEO") and shall otherwise comply with each and every term of this Agreement.

*Id.* The PSA also contains an indemnification provision, which states:

[RAWV] shall protect, indemnify, and hold harmless [WBGH] and its officers, directors, employees, affiliates, agents, parent, subsidiaries and affiliates, from and defend against any and all claims, demands, actions, settlements, costs, damages, judgments, liability, and expense of any kind (including settlements, judgments, court costs, and attorneys' fees and expenses actually and reasonably incurred, regardless of the outcome of such claim or action) arising out of, based on, resulting from, or in any way related to injuries or damages to persons or property in connection with the provision of

- 4 -

Services by [RAWV] hereunder, and including but not limited to, any loss, injury, or damage incurred by [WBGH] as a result of any lapse, suspension, or revocation of the license(s) or certification of [RAWV] or any of [RAWV]'s Representatives during the performance of Services pursuant to the Agreement. [WBGH] specifically reserves any common law right of indemnity and/or contribution which it may have against [RAWV].

(Doc. 112-1 at 7). A virtually identical provision requires WBGH to indemnify RAWV. *Id.*

In addition to the PSA entered into with WBGH, RAWV also entered a Radiology Services Agreement ("RSA") with additional defendant TRG, whereby TRG agreed to provide evening and weekend radiology services. (Doc. 112, ¶23). The RSA identifies TRG as the "Provider" and RAWV as the "Center." (Doc. 112-2 at 1). The RSA provides that:

[TRG] shall be responsible for ensuring radiology coverage of [RAWV] from 5pm-8am weekdays and weekends, through the use of teleradiology. TRG can be available for emergency weekday and weekend 7am-5pm overflow coverage if asked to cover . . . [TRG] shall be responsible for recruiting, contracting, scheduling, compensating and supervising all Radiologists.

(Doc. 112-2 at 1). The RSA also provides that TRG shall:

(a) maintain such accurate and complete files and records as shall be deemed appropriate by [RAWV];

(b) maintain the confidentiality of information made available as a result of services provided at [RAWV];

(c) require the Radiologists to participate in [RAWV] programs including, without limitation, quality assurance, medical audit, risk management[;]

(d) . . . use its best efforts to comply with the [outlined] turn-around schedule.

*Id.* at 1-2. The RSA further requires that any Radiologist TRG engages must "use his or her best and most diligent efforts and professional skills and judgment in rendering services[.]" *Id.* at 3. RAWV and TRG also agreed to indemnify each other, in similar language to the PSA set forth above. *Id.* at 6. In addition, the RSA states that:

It is mutually understood and agreed that [TRG] may engage employees, agents and independent contractors in order to facilitate its performance of the professional services, duties and obligations contemplated by this Agreement. Such persons shall be the employees, agents or independent contractors of [TRG], not [RAWV], and such persons shall report to and, if applicable, be subject to the control of [TRG], not [RAWV]. [RAWV] shall neither have nor exercise any control or direction over the methods or manner by which [TRG] personnel perform their professional services and functions. Except for requiring the coverage of services called

- 6 -

for in this Agreement, [RAWV] shall not set nor shall it have the right to set, the specific working hours of [TRG]'s personnel. **The standards of medical practice and medical duties of these persons shall be determined by the Medical Staff of [RAWV].** These persons shall not be subject to any procedures applicable to [RAWV] employees, nor shall they be entitled to employee benefits including vacation pay, sick leave, retirement benefits, Social Security, Workers' Compensation, disability or unemployment insurance benefits that may be provided to [RAWV]'s employees.

*Id.* at 7 (emphasis added). Based upon the RSA, TRG engaged Dr. Uddin. (Doc. 112-3). TRG and Dr. Uddin signed an Independent Contractor Agreement ("ICA"), whereby Dr. Uddin was the "Contractor." *Id.* at 1. The ICA states that "TRG desires that [Dr. Uddin] provide diagnostic radiology services[.]" *Id.* Per the ICA, Dr. Uddin is required to obtain and maintain general liability and malpractice insurance. *Id.* at 4. Dr. Uddin also agreed to indemnify TRG in the event of: "(1) any breach or inaccuracy of any covenant, representation or warranty by [Dr. Uddin] of this Agreement; and/or (2) the fault or negligence of [Dr. Uddin], [his] officers, employees, agents, and/or representatives; and or (3) assertions under workers[.]" *Id.* at 6.

On April 25, 2023, Plaintiff filed a Complaint against, *inter alia*, Dr. Uddin and WBGH. (Doc. 1). On October 18, 2023, WBGH filed a Joinder Complaint against RAWV, (Doc. 19), and on November 9, 2023, filed the same against The Radiology Group, LLC ("TRG"), (Doc. 27). On December 29, 2025, RAWV filed the instant motion for summary judgment, which argues that "pursuant to the PSA, RSA, and [ICA], RAWV has no contractual connection to Dr. Uddin and should be dismissed from this action." (Doc. 112 at 113). On January 12, 2026, RAWV filed its brief in support of its motion. (Doc. 114). Plaintiff filed his brief in opposition on January 20, 2026. (Doc. 118). WBGH filed its brief in opposition on February 3, 2026. (Doc. 120). This matter is now ripe for disposition.

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is [(1)] no genuine issue as to any material fact and [(2)] that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). Material facts are those that "might affect the outcome of the suit under the governing law," and a dispute is

- 8 -

"genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (holding that a court may not weigh the evidence or make credibility determinations). Rather, the Court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on a motion for summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. The moving party's burden has recently been explained this way:

In interpreting Rule 56, the Supreme Court has outlined two closely related methods for a movant to succeed at summary judgment. First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986) (explaining the meaning of the terms 'material' and 'genuine'). Second, under the *Celotex* approach, a moving party may instead demonstrate that the nonmoving party has not made "a showing sufficient to establish the existence of an element essential to that party's case ... *on which that party will bear the burden of proof at trial.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).

*Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622 (3d Cir. 2024).

If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing

- 10 -

sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III.    Discussion

Vicarious liability, as alleged in Plaintiff's Complaint:

> [M]eans in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it.

*Green v. Pennsylvania Hosp.*, 123 A.3d 310, 316 (Pa. 2015) (quoting *Crowell v. Cty. of Philadelphia*, A.2d 1178, 1181 (Pa. 1992)). "Once the requisite relationship . . . is demonstrated, 'the innocent victim has recourse against the principal,' even if 'the ultimately responsible agent is unavailable or lacks the ability to pay.'" *Green*, 123 A.2d at 316 (quoting *Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1383 (Pa. 1989). Employer liability is "simply one form of agency liability." *Forrer-Frye v. Sabatini*, No. 4:20-CV-593, 2023 WL 373236 at *3 (M.D.Pa. Jan 24, 2023).

- 11 -

The issue before the Court is whether, viewed in the light most favorable to Plaintiff and WBGH, the contractual relationships between WBGH and RAWV, RAWV and TRG, and TRG and Dr. Uddin create a genuine issue of material fact as to whether Dr. Uddin was an employee of RAWV. This Court answers in the affirmative and will thus deny RAWV's motion.

As a preliminary matter, the plain language of the agreement between WBGH and RAWV alone provides sufficient grounds to deny RAWV's motion. As noted above, the PSA defines RAWV as the "Provider." (Doc. 112-1). Notably, the PSA states:

> As used in the Agreement, the terms "[RAWV]," "[RAWV]'s Representative," and/or "[RAWV]'s Representatives" shall all (i) **mean [RAWV] and all of [RAWV]'s employees, shareholders, partners, subcontractors, and agents of Provider providing Services under the Agreement and** (ii) have the same meaning regardless of whether they are used individually or collectively in the Agreement.

(Doc. 112-1 at 3) (emphasis added). According to Black's Law Dictionary, a "subcontractor" is "[s]omeone who is awarded a portion of an existing contract by a contractor, esp. a general contractor." Black's Law Dictionary (12th ed. 2024). An "agent" is "[s]omeone who is authorized to act for or in

- 12 -

place of another; a representative." *Id.* Therefore, because TRG was contracted by RAWV to "engage employees, agents and independent contractors," (Doc. 112-2 at 7) such as Dr. Uddin, a jury could determine that TRG was a "subcontractor" or "agent" of RAWV. Thus, a genuine issue of material fact exists as to whether an employment relationship between RAWV and Dr. Uddin exists such that RAWV is liable for the acts of Dr. Uddin.

Though the analysis could stop at the PSA's plain language, we nonetheless address some additional arguments RAWV presents in its motion. RAWV next attempts to disclaim the existence of an employment relationship with Dr. Uddin based upon the indemnification clause set forth in the PSA with WBGH. RAWV claims that "while the PSA contains an indemnification clause, RAWV only agreed to indemnify WBGH for its own conduct, not the conduct of its representatives." (Doc. 114 at 14). However, as this Court has already noted, the plain language of the PSA could be read as holding RAWV liable for "all of [RAWV]'s employees, shareholders, partners, subcontractors, and agents of [RAWV] providing Services under the Agreement." (Doc. 112-1 at 3). Thus, a reasonable jury *could* conclude that RAWV did, in fact, agree to indemnify WBGH for the acts of TRG, and subsequently, Dr. Uddin.

- 13 -

Moreover, even if no genuine issue of material fact existed as to whether RAWV agreed to indemnify WBGH for the liability of TRG, and subsequently, Dr. Uddin; granting a motion for summary judgment based on the indemnification agreement would be premature. Indemnification "is not a fault sharing mechanism; it is a fault shifting mechanism where a defendant seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." *Willet v. Pa. Med. Catastrophe Loss Fund*, 702 A.2d 850, 854 (Pa. 1997). Thus, the issue of indemnification is only reached once fault is established. *Id.* Whatever the defendants previously agreed upon regarding shifting fault to one another has, frankly, nothing at all to do with establishing fault in the first instance. Because a genuine issue of material fact as to RAWV's employment relationship with Dr. Uddin, RAWV's fault has yet to be established by a jury.

Finally, RAWV relies on the expert report of Vasilos J. Kalogredis, J.D., who has opined that the ultimate responsibility "should rest with TRG and Dr. Uddin, not RAWV." (Doc. 114 at 16). However, this Court "may not make credibility determinations or weigh the evidence[,]" including on the conclusions of Attorney Kalogredis. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Penn Mutual Life Ins. Co. v. Norma Espinos 2007-1 Ins. Trust*, 70 F.Supp.3d 628 (D.Del. 2014) ("In assessing

- 14 -

the reliability of an expert's report, the Court will not attempt to determine which party's expert advances the correct conclusions, but only whether the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" (internal citations omitted)). While the Court appreciates RAWV's attempt to utilize its expert opinion to support the motion for summary judgment, the Court nonetheless declines to deviate from its role at the summary judgment stage.

Based on the foregoing, RAWV has failed to demonstrate the absence of a genuine issue of material fact with respect to its liability for the actions of Dr. Uddin. *Celotex*, 477 U.S. at 323, *supra*. Thus, this Court must deny its request for summary judgment.

## IV.    Conclusion

For the reasons set forth above, viewed in the light most favorable to WBGH and Plaintiff, the Court holds that a genuine issue of material fact exists as to whether RAWV and Dr. Uddin had an employment relationship such that RAWV could be held liable for the acts of Dr. Uddin. This issue must be resolved by a jury. Therefore, **IT IS HEREBY ORDERED THAT** RAWV's motion for summary judgment, (Doc. 112), is **DENIED**. An appropriate order will follow. Additionally, by separate Order, the Court will set a date for the final pretrial conference and trial in this matter.

MALACHY E. MANNION
United States District Judge

**DATE:** 7/6/26
23-680-05

- 16 -